UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------------------------------- X

TOD S. CAGAN,                                                    **Docket No.: 22-CV-00260**
                                                                        **(EK)(ARL)**

                                            Plaintiff,

-against-

NEW YORK CITY POLICE OFFICER GREGORY
RITTENHOUSE, individually and in his official capacity, NEW
YORK CITY POLICE OFFICER MICHAEL PHILBIN,                        **AMENDED**
individually and in his official capacity, CITY OF NEW YORK,     **COMPLAINT**
NEW YORK CITY POLICE DEPARTMENT, INCORPORATED
VILLAGE OF FREEPORT, VILLAGE OF FREEPORT POLICE
DEPARTMENT, VILLAGE OF FREEPORT DETECTIVE GENE
H. HALL, JR., individually and in his official capacity, VILLAGE
OF FREEPORT POLICE OFFICER LAWRENCE K. HORNE,
individually and in his official capacity, VILLAGE OF FREEPORT
POLICE OFFICER KENNEDY #00511, individually and in his
official capacity, VILLAGE OF FREEPORT POLICE OFFICER            **JURY TRIAL**
VINCENT FALZONE, individually and in his official capacity,      **DEMANDED**
VILLAGE OF FREEPORT POLICE OFFICER MICHAEL
GENIALE, individually and in his official capacity, VILLAGE OF
FREEPORT SERGEANT JOHN ROE, individually and in his
official capacity, VILLAGE OF FREEPORT SERGEANT
THOMAS L. WILLIAMS, individually and in his official capacity,
VILLAGE OF FREEPORT POLICE OFFICER JOHN DOES #1-10,
individually and in their official capacities, COUNTY OF NASSAU,
NASSAU COUNTY POLICE DEPARTMENT, NASSAU
COUNTY POLICE OFFICER JOHN DOES #11-20, individually
and in their official capacities, NASSAU COUNTY DISTRICT
ATTORNEY'S OFFICE, NASSAU COUNTY DISTRICT
ATTORNEY MADELINE SINGAS, individually and in her official
capacity, NASSAU COUNTY DISTRICT ATTORNEY ANNE T.
DONNELLY, individually and in her official capacity, and
NASSAU COUNTY ASSISTANT DISTRICT ATTORNEY JOHN
DOES #21-30, individually and in their official capacities,

                                            Defendants.

--------------------------------------------------------------------------------- X

Plaintiff TOD S. CAGAN, by his attorneys, The Russell Friedman Law Group, LLP,

complaining of Defendants, respectfully states and alleges, upon information and belief, as

follows:

PF/D244302/FL3160

## PRELIMINARY STATEMENT

1.      This is a civil rights action for money damages against Defendants NEW YORK CITY POLICE OFFICER GREGORY RITTENHOUSE, individually and in his official capacity, NEW YORK CITY POLICE OFFICER MICHAEL PHILBIN, individually and in his official capacity, CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT, INCORPORATED VILLAGE OF FREEPORT, VILLAGE OF FREEPORT POLICE DEPARTMENT, VILLAGE OF FREEPORT DETECTIVE GENE H. HALL, JR., individually and in his official capacity, VILLAGE OF FREEPORT POLICE OFFICER LAWRENCE K. HORNE, individually and in his official capacity, VILLAGE OF FREEPORT POLICE OFFICER KENNEDY #00511, individually and in his official capacity, VILLAGE OF FREEPORT POLICE OFFICER VINCENT FALZONE, individually and in his official capacity, VILLAGE OF FREEPORT POLICE OFFICER MICHAEL GENIALE, individually and in his official capacity, VILLAGE OF FREEPORT SERGEANT JOHN ROE (representing as yet unknown and unidentified sergeant of the Village of Freeport Police Department), individually and in his official capacity, VILLAGE OF FREEPORT SERGEANT THOMAS L. WILLIAMS, individually and in his official capacity, VILLAGE OF FREEPORT POLICE OFFICER JOHN DOES #1-10 (representing as yet unknown and unidentified members of the Village of Freeport Police Department), individually and in their official capacities, COUNTY OF NASSAU, NASSAU COUNTY POLICE DEPARTMENT, NASSAU COUNTY POLICE DEPARTMENT POLICE OFFICER JOHN DOES #11-20 (representing as yet unknown and unidentified members of the Nassau County Police Department), individually and in their official capacities, NASSAU COUNTY DISTRICT ATTORNEY'S OFFICE, NASSAU COUNTY DISTRICT ATTORNEY MADELINE SINGAS, individually and in her official capacity, NASSAU

PF/D244302/FL3160

COUNTY DISTRICT ATTORNEY ANNE T. DONNELLY, individually and in her official capacity, and NASSAU COUNTY ASSISTANT DISTRICT ATTORNEY JOHN DOES #21-30 (representing as yet unknown and unidentified members of the Nassau County District Attorney's Office), individually and in their official capacities, (hereinafter, collectively referred to as "Defendants") for committing acts under color of law and depriving Plaintiff, TOD S. CAGAN, of his rights secured by the First, Fourth, Fifth, Sixth, and Fourteenth Amendments of the Constitution and laws of the United States.

2.       Plaintiff seeks damages, both compensatory and punitive, award of costs, interest, attorney's fees, and such other and further relief as this Court deems just and equitable.

## JURISDICTION

3.       This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988 and the First, Fourth, Fifth, Sixth, and Fourteenth Amendments of the United States Constitution. Jurisdiction is conferred upon this Court by 42 U.S.C. § 1983 and by 28 U.S.C. §§ 1331 and 1343(3) and (4) of the aforementioned constitutional provisions.

## VENUE

4.       Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b) since all of the events and omissions giving rise to Plaintiff's claims occurred within the County of Nassau; the actual place of employment of the majority of the individual Defendants is the County of Nassau in the Eastern District of New York; and the County of Nassau is within the jurisdiction of the Eastern District of New York. The events surrounding this lawsuit occurred in the County of Nassau, in the Eastern District of New York. Additionally, Plaintiff resides within the County of Nassau in the Eastern District of New York.

## THE PARTIES

5.     Plaintiff Tod S. Cagan ("Cagan" or "Plaintiff") is a resident of the United States who lives within the Eastern District of New York.

6.     At all relevant times described herein, Defendant New York City Police Officer Gregory Rittenhouse ("Rittenhouse") is a New York City Police Officer who is being sued in his individual and official capacity and is an employee of the City of New York. At all relevant times described herein, Defendant Rittenhouse was acting under color of state law within the scope of his employment as an officer with the City of New York.

7.     At all relevant times described herein, Defendant New York City Police Officer Michael Philbin ("Philbin") is a New York City Police Officer who is being sued in his individual and official capacity and is an employee of the City of New York. At all relevant times described herein, Defendant Philbin was acting under color of state law within the scope of his employment as an officer with the City of New York.

8.     At all relevant times described herein, Defendant City of New York ("NYC") was and continues to be a municipal corporation organized and existing by virtue of the laws of the State of New York.

9.     At all relevant times described herein, Defendant City of New York Police Department ("NYPD") is a subdivision and/or agency of Defendant NYC and has an office at 1 Police Plaza, New York, New York 10038.

10.     At all relevant times described herein, Defendant Incorporated Village of Freeport ("Village") was and continues to be a municipal corporation organized and existing by virtue of the laws of the State of New York.

PF/D244302/FL3160

11.     At all relevant times described herein, Defendant Village, by its agents and/or employees, operated, maintained, and controlled the Village of Freeport Police Department, including all police officers, supervising officers, and detectives thereof.

12.     At all relevant times described herein, Defendant Village of Freeport Police Department ("VFPD") is a subdivision and/or agency of Defendant Village and has an office at 40 North Ocean Avenue, Freeport, New York 11520.

13.     Defendant Village of Freeport Detective Gene H. Hall, Jr. ("Hall") is a Detective with the VFPD who is being sued in his individual and official capacity and is an employee of the Village. At all relevant times described herein, Defendant Hall was acting under color of state law within the scope of his employment as a detective with VFPD.

14.     Defendant Village of Freeport Police Officer Lawrence K. Horne ("Horne") is a police officer with the VFPD who is being sued in his individual and official capacity and is an employee of the Village. At all relevant times described herein, Defendant Horne was acting under color of state law within the scope of his employment as a police officer with VFPD.

15.     Defendant Village of Freeport Police Officer Kennedy #00511 ("Kennedy") is a police officer with the VFPD who is being sued in his individual and official capacity and is an employee of the Village. At all relevant times described herein, Defendant Kennedy was acting under color of state law within the scope of his employment as a police officer with VFPD.

16.     Defendant Village of Freeport Police Officer Vincent Falzone ("Falzone") is a police officer with the VFPD who is being sued in his individual and official capacity and is an employee of the Village. At all relevant times described herein, Defendant Falzone was acting under color of state law within the scope of his employment as a police officer with VFPD.

PF/D244302/FL3160

17.     Defendant Village of Freeport Police Officer Michael Geniale ("Geniale") is a police officer with the VFPD who is being sued in his individual and official capacity and is an employee of the Village. At all relevant times described herein, Defendant Geniale was acting under color of state law within the scope of his employment as a police officer with VFPD.

18.     Defendant Village of Freeport Sergeant John Roe ("Roe") (representing as yet unknown and unidentified sergeant of the Village of Freeport Police Department) is a sergeant with the VFPD who is being sued in his individual and official capacity and is an employee of the Village. At all relevant times described herein, Defendant Roe was acting under color of state law within the scope of his employment as a sergeant with VFPD.

19.     Defendant Village of Freeport Sergeant Thomas L. Williams ("Williams") is a sergeant with the VFPD who is being sued in his individual and official capacity and is an employee of the Village. At all relevant times described herein, Defendant Williams was acting under color of state law within the scope of his employment as a sergeant with VFPD.

20.     Defendant Village of Freeport Police Officer John Does #1-10 ("Does #1-10") (representing as yet unknown and unidentified members of the Village of Freeport Police Department), are police officers with the VFPD who are being sued in their individual and official capacities and are employees of the Village. At all relevant times described herein, Defendant Does #1-10 were acting under color of state law within the scope of their employment as police officers with VFPD.

21.     At all relevant times described herein, Defendant County of Nassau ("County") was and continues to be a municipal corporation organized and existing by virtue of the laws of the State of New York.

PF/D244302/FL3160

22.     At all relevant times described herein, Defendant Nassau County Police Department ("NCPD") is a subdivision and/or agency of Defendant County and has an office at 1490 Franklin Avenue, Mineola, New York 11501.

23.     Defendant Nassau County Police Officer John Does #11-20 ("Does #11-20") (representing as yet unknown and unidentified members of the Nassau County Police Department) are police officers with the NCPD who are being sued in their individual and official capacities and are employees of the County. At all relevant times described herein, Defendant Does #11-20 were acting under color of state law within the scope of their employment as police officers with NCPD.

24.     At all relevant times described herein, Defendant Nassau County District Attorney's Office ("NCDA") was and continues to be a is a subdivision and/or agency of Defendant County and has an office at 262 Old Country Road, Mineola, New York 11501.

25.     Defendant Nassau County District Attorney Madeline Singas ("Singas"), individually and in her official capacity, is a duly elected official and is charged with investigating and prosecuting violations of state and local criminal statutes occurring within Nassau County, New York. Singas has an office at 262 Old Country Road, Mineola, New York 11501. At all relevant times described herein, Singas was acting under color of state law within the scope of her employment as the Nassau County District Attorney.

26.     Defendant Nassau County District Attorney Anne T. Donnelly ("Donnelly"), individually and in her official capacity, is a duly elected official and is charged with investigating and prosecuting violations of state and local criminal statutes occurring within Nassau County, New York. Donnelly has an office at 262 Old Country Road, Mineola, New

PF/D244302/FL3160

York 11501. At all relevant times described herein, Donnelly was acting under color of state law within the scope of her employment as the Nassau County District Attorney.

27.     Nassau County Assistant District Attorney John Does #21-30 ("Does #21-30") (representing as yet unknown and unidentified members of the Nassau County District Attorney's Office), individually and in their official capacities, are Assistant District Attorneys who are being sued in their individual and official capacities and are employed by the County. At all relevant times described herein, Does #21-30 were acting under color of state law within the scope of their employment as Assistant District Attorneys employed by the County.

## NATURE OF THE CASE

28.     This is an action seeking recovery for deprivation of Plaintiff's civil rights guaranteed to him under the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution committed by the above-named municipal Defendants.

29.     Plaintiff Cagan was subjected to arrest, criminal charges, and commencement of criminal proceedings based on perjurious testimony, material misrepresentations, and fabricated evidence presented by Defendants at the District Court of Nassau County on or about June 18, 2018, and the filing of a felony complaint.

30.     On or about January 2, 2019, the criminal matter was adjourned in contemplation of dismissal ("ACD"). Plaintiff is presently seeking to have his ACD disposition vacated and, thereafter, have the charges dismissed based upon recently discovered evidence which Defendants withheld from him in violation of his rights guaranteed under the U.S. Constitution.

31.     Plaintiff was subjected to degrading and abusive treatment, strip search, unlawful arrest, malicious prosecution, denial of his rights, unlawful detention, illegal restraint, false arrest, great indignities, ridicule, scorn, loss of freedom, humiliation, mental distress, was

PF/D244302/FL3160

prevented from attending his usual activities was injured in his reputation in the community and violation of his substantive and procedural due process rights under the laws of the United States.

## **FACTUAL ALLEGATIONS**

32. Mr. Tod S. Cagan is a fifty-two (52) year old father of two adult children. Mr. Cagan has run and operated Affordable Bathtub Conversion, a home improvement business, for well over eleven (11) years.

33. Mr. Cagan has resided at the same address in Freeport, County of Nassau, New York for approximately eight (8) years.

34. On or about the evening of June 15, 2018, Plaintiff and his now fiancé Dale Gaylor had intended to go dancing at a local bar/restaurant known as Bracco's Clam Bar ("Bracco's") located on the Nautical Mile in Freeport, New York.

35. Plaintiff Cagan and Dale Gaylor had intended to go to Bracco's via Plaintiff Cagan's boat which is docked at his house.

36. Defendant Michael Philbin resides across the street from Plaintiff Cagan in Freeport, New York.

37. That evening, Defendant Philbin approached Plaintiff in the street and asked Plaintiff Cagan for a ride on Plaintiff's boat to the Nautical Mile.

38. Plaintiff agreed to take Defendant Philbin to the Nautical Mile. Defendant Philbin was meeting his friends. Plaintiff, Dale Gaylor, and Defendant Philbin arrived at Bracco's at approximately 7 p.m.

39. Plaintiff docked his boat at Bracco's and then walked over to Hudsons, another restaurant at the Nautical Mile, with Dale Gaylor and Defendant Philbin.

PF/D244302/FL3160

40.     Though Plaintiff, Dale Gaylor, and Defendant Philbin entered Hudsons together, they thereafter separated.

41.     Plaintiff and Dale Gaylor remained at Hudsons for approximately thirty (30) minutes and then went back to Bracco's.

42.     Defendant Philbin remained at Hudsons with Defendant Rittenhouse and other unknown individuals. Thereafter, Defendants Rittenhouse and Philbin and a third unknown individual went to Jeremy's Ale House ("Jeremy's").

43.     Later that night, Plaintiff Cagan and Dale Gaylor went to Jeremy's. Defendants Rittenhouse and Philbin were still at Jeremy's. Defendants Philbin and Rittenhouse approached Plaintiff and Dale Gaylor and asked for a ride back to Sportsman Avenue, Freeport, New York on their vessel.

44.     Plaintiff acquiesced to Defendants Philbin and Rittenhouse's request and transported them both back to Sportsman Avenue on his vessel. Defendant Rittenhouse was highly inebriated.

45.     Upon arriving at Plaintiff's home and docking the vessel, Defendant Rittenhouse asked to use Plaintiff's bathroom. Plaintiff allowed Defendant Rittenhouse to use his bathroom. Plaintiff, Dale Gaylor, Defendant Philbin, and Defendant Rittenhouse all went into Plaintiff's home.

46.     Upon entering Plaintiff's home, Defendant Rittenhouse immediately went into the bathroom located near Plaintiff's kitchen. Plaintiff, Dale Gaylor, and Defendant Philbin sat at Plaintiff's kitchen table and waited for Defendant Rittenhouse.

47.     After Defendant Rittenhouse exited the bathroom, Plaintiff went to use his bathroom as well. Upon entering the bathroom, Plaintiff notice that there was vomit and urine all

over his bathroom. Plaintiff spent the next ten minutes cleaning up his bathroom after Defendant Rittenhouse had used it.

48.     Thereafter, Plaintiff went into the kitchen. Dale Gaylor, Defendant Rittenhouse, and Defendant Philbin were sitting at the kitchen table.

49.     Immediately upon entering the kitchen, Defendant Rittenhouse began questioning Plaintiff about a certain vape pen that was on the kitchen table. Specifically, Defendant Rittenhouse asked "what's in the vape pen?" To which Plaintiff responded "it's CBD." Defendant Rittenhouse then exclaimed "What's that?" Plaintiff informed Defendant Rittenhouse what CBD was.

50.     Defendant Rittenhouse then demanded that 911 be called. Defendant Philbin responded by stating "are you serious?" three times.

51.     Defendants Philbin and Rittenhouse left Plaintiff's home and went outside. Once outside, rather than call 911, Defendant Philbin contacted Defendant Geniale who was a friend of his. Defendant Geniale met Defendants Philbin and Rittenhouse outside of Defendant Philbin's home.

52.     Defendants Philbin and Rittenhouse told Defendant Geniale that "he [referring to Rittenhouse] was slipped weed." Defendants Rittenhouse and Philbin further stated this had occurred at the "Mile" [referring to the Nautical Mile in Freeport]. Defendants Rittenhouse and Philbin explained that while they were at the Mile, Defendant Rittenhouse was at a bar and inhaled a puff of a vape pen that belonged to a stranger and was experiencing some sort of reaction.

53.     Defendant Geniale called Defendant Sergeant Roe who directed Geniale to tell Defendants Rittenhouse and Philbin to call 911, request an ambulance, and go to the hospital.

PF/D244302/FL3160

Sergeant Roe further directed that, if at the hospital it is determined that there is marijuana in Defendant Rittenhouse's system, VFPD will get involved and a detective would be sent to take a statement and conduct an investigation.

54.    Neither Defendant Geniale or Defendant Roe documented the aided call via an incident report or an unusual incident report which is in direct contravention of departmental policies and procedures.

55.    Defendants Rittenhouse and Philbin called 911. Defendant Falzone responded to Defendant Philbin's home. A Nassau County Police Department Emergency Ambulance Bureau ambulance was also dispatched to Defendant Philbin's home.

56.    Defendant Falzone spoke with Defendants Rittenhouse and Philbin. Defendant Falzone's Aided Report states as follows:

> Upon arrival, reporting officer spoke with the aided, Gregory, who states he was at a bar and inhaled a puff of a Vaporizer pen that belonged to a stranger and is having some sort of reaction which he believes is related to the pen. Gregory states he did not know the person who offered him the Vaporizer Pen. Gregory states he smoked a puff of the vaporizer pen and now is experiencing a elevated heartbeat, dry mouth and his skin feels very "weird". Gregory also states that he is feeling lightheaded. Gregory requests to go to the hospital to be evaluated by a doctor. Reporting officer spoke with Gregory's friend, Michael, who confirms the incident. Aided was transported in 2354 with Police Medic Sutton.

57.    On or about June 16, 2018, Defendant Rittenhouse was transported to Southside Nassau Community Hospital ("Hospital"). At the Hospital, Defendant Rittenhouse tested positive for THC.

58.    Upon learning of the test results, Defendants conspired and fabricated a different narrative from what actually occurred on the late night of June 15, 2018 - early morning of June 16, 2018. This was done in order to protect Defendant Rittenhouse's employment with the City

PF/D244302/FL3160

of New York in the New York Police Department. Defendant Rittenhouse used his status as a New York City Police Officer in order to fabricate an entirely new narrative.

59.     Other named Defendants aided and abetted Defendant Rittenhouse in the fabrication of an entirely new narrative that accused Plaintiff of wrongdoing. This was done through the filing of false police reports and then by withholding exculpatory evidence from Plaintiff during the course of the criminal prosecution of Plaintiff. Defendant Rittenhouse believed he would get away with this lie and cover-up because he was a police officer and the other named Defendants would protect him.

60.     Defendant Rittenhouse, with the aid of the other named Defendants, filed false criminal charges against Plaintiff Cagan. Specifically, Plaintiff Cagan was charged with Assault in 2nd Degree in violation of NY PL § 120.05 (5), a class D Felony.

61.     Defendant Rittenhouse's supporting Deposition in relevant part stated as follows:

Tod offer [sic] us a ride back to Mike's house on his boat. We accepted the offer for the ride. We left Jeremy's about 1:00 a.m. We got back to Tod's house. We docked his boat at that location. I knew it was on Sportsman Ave. in Freeport, because he lives across the street from Mike. We talked for a few more minutes, then Tod insisted we come into his home. We went in and sat at a table in his kitchen. He offered me a Woodchuck Cider. I drank a little of it. It didn't taste good. I got up to go outside and smoke a cigarette. Tod, said "I got a vape." He handed me a large brown metallic vape. I asked him, "It's just tobacco?". Tod said "Yes." I asked him again, "I am a cop. It's just tobacco, right?". Tod responds, "Yes." . . . After I exhaled the vapors, I immediately felt sick. I started getting a tiggling [sic] sensation in my hands and arms. I was feeling nauseated, vision obscured and dizzy. . . When I said I need to go to the hospital, Tod said, "It only medical marijuana, its legal." When Tod said that, I told Mike I need an ambulance.

62.     Defendant Philbin's supporting deposition in relevant part stated:

At one point Cagan offered a vape pen to use instead of going outside. I then heard Greg ask several times – it is only tobacco right – Cagan answered "yes just tobacco". Then Greg took he pen and started to vape.
Within moments Greg left to go to the bathroom. When Greg returned he told me he felt sick. I noticed he looked green.

PF/D244302/FL3160

Greg and I were talking about going to the hospital. At that point Cagan said it was "medical marijuana vape". At that point I took Greg to my house across the street and called for ambulance.

63.     The above statements by Defendants Rittenhouse and Philbin are in complete contravention of what they told Defendants Geniale and Falzone. Nonetheless, Defendants proceeded with charging, arresting, and prosecuting Plaintiff all in order to save Defendant Rittenhouse's employment with the City of New York and New York Police Department.

64.     On or about June 17, 2018, Defendants Hall, Horne, Kennedy, Geniale, and Does #1-10 arrived at Plaintiff's home, unlawfully entered his home, and arrested him in front of his children on Father's Day. Plaintiff was removed from his home in handcuffs in front of all his neighbors and transported to VFPD headquarters. All the while Defendants knew that Plaintiff Cagan was completely innocent and there was no probable cause to arrest Plaintiff.

65.     At VFPD headquarters, Plaintiff was searched, then processed and questioned. At no point was Plaintiff informed of his rights. Moreover, Defendant Hall drafted and prepared a statement and told Plaintiff that if he wanted to go home, he needed to sign the "paperwork".

66.      Plaintiff was then transported to Nassau County Police Department headquarters where he was further processed and detained until arraignment the next day.

67.     Plaintiff was arraigned and charged with Assault in 2nd Degree in violation of NY PL § 120.05 (5), a class D Felony. Plaintiff was released on his own recognizance.

68.     Defendant Hall signed the accusatory instrument for the prosecution of Plaintiff Cagan, dated June 17, 2018.

69.     Defendants had no evidence to substantiate the charges. The prosecution of Plaintiff was continued with malice.

70.     The prosecution of Plaintiff was continued after probable cause was vitiated. In

point of fact, Defendants all along were aware that Defendants Geniale and Falzone had responded to the scene and both were provided with a different story by Defendants Rittenhouse and Philbin. Defendants had irrefutable evidence of Plaintiff's innocence. Despite this, Mr. Cagan's prosecution was continued, despite knowledge that such prosecution was unlawful and in violation of Plaintiff's rights. Moreover, Defendants Singas and Does #21-30 failed to disclose Defendants Geniale and Falzone as witnesses, as well as failed to provide a copy of Falzone's Aided Report in violation of Plaintiff's rights.

71.    Defendants had in their possession all of the information which could have exculpated Plaintiff from the onset of the criminal case.

72.    Demonstrating further malice and in order to cover up Defendants' scheme, Plaintiff was forced to accept an ACD and, if he declined, NCDA, Singas, and Does #21-30 threatened that they would continue to prosecute Plaintiff and ultimately seek conviction on the felony charges despite knowledge in fact that NCDA, Singas, and Does #21-30, as well as the other named Defendants, possessed irrefutable evidence of Plaintiff's innocence. Such action was done with malice and with the intent of denying Plaintiff his civil rights.

73.    Plaintiff Cagan's prosecution continued after there was no longer probable cause to believe that Plaintiff had any involvement in any of the alleged and charged crime. The prosecution was continued solely to cover-up Defendants' unlawful and unconstitutional conduct.

74.    As a result of the malicious prosecution, Plaintiff Cagan was required to pay for the services of a criminal defense attorney at a substantial cost to him. Information about the arrest and/or prosecution was intentionally and maliciously released to the public, impugning Cagan's reputation and causing Plaintiff shame and humiliation.

PF/D244302/FL3160

75.     Plaintiff was required to appear in court after Defendants had incontrovertible evidence that Plaintiff was not involved in the alleged crimes he was arrested and charged with.

76.     Defendant Falzone and Defendant Geniale were intentionally never disclosed by Defendants as having been involved in the arrest of Plaintiff or as being witnesses to the events leading to the arrest of Plaintiff. Defendant Falzone's Aided Report was similarly intentionally withheld by Defendants.  Cagan relied upon Defendants' integrity to disclose all Brady material.

77.     Plaintiff Cagan's prosecution terminated on or about January 2, 2019, when he was forced to accept an ACD as the disposition of his criminal matter.

78.     On or about late June 2018, Plaintiff Cagan filed a civilian complaint with VFPD internal affairs and NYPD internal affairs in connection with Plaintiff's unlawful arrest and prosecution based on perjured testimony and fabricated evidence.

79.     NYPD Internal Affairs Bureau ("NYPD IAB") assigned Detectives O'Houche and Garcia to investigate Plaintiff's complaint. VFPD Internal Affairs Bureau ("VFPD IAB") assigned Detective Vincent Kennedy to investigate Plaintiff's complaint.

80.     VFPD IAB and NYPD IAB failed to conduct any sort of meaningful investigation into Plaintiff's unlawful arrest and prosecution based on perjured testimony and fabricated evidence.

81.     That, a minimal inquiry into the facts, circumstances, and the supporting documentation in the instant matter would have led both departments to conclude that Plaintiff's civilian complaint was "founded".

82.     VFPD IAB has failed and continues to fail to respond to the continuing and urgent need to prevent, restrain, and discipline police officers that deprive citizens of their civil rights.

83.     NYPD IAB has failed and continues to fail to respond to the continuing and

PF/D244302/FL3160

urgent need to prevent, restrain, and discipline police officers that deprive citizens of their civil rights.

84.     The purported system maintained by VFPD IAB has failed and continues to fail to properly review unjustified behavior and activities by police officers and has failed and continues to fail to identify acts by police officers and to subject officers to discipline, closer supervision, or restraint, to the extent that it has become the custom of Defendant Village to tolerate the improper and illegal arrests and other wrongful actions by its police officers.

85.     The purported system maintained by NYPD IAB has failed and continues to fail to properly review unjustified behavior and activities by police officers and has failed and continues to fail to identify acts by police officers and to subject officers to discipline, closer supervision, or restraint, to the extent that it has become the custom of Defendant NYC to tolerate the improper and illegal arrests and other wrongful actions by its police officers.

86.     Specific systemic flaws in Defendants Village and NYC's police misconduct review process include, but are not limited to, the following:

a.     Preparing reports regarding investigations of incidents as routine point-by-point justification of the police officers' actions regardless of whether such actions are justified;

b.     Police officers investigating incidents systemically fail to credit testimony by non-police officer witnesses and uncritically rely on reports by police officers involved in the incident;

c.     Police officers investigating incidents fail to include in their reports relevant factual information that would tend to contradict the statements of the police officer(s) involved;

d.     Police officers failing to communicate, properly respond to the scene, and

failing to provide the proper supervision at the scene of incidents;

    e.    Create and manufacture false testimony and evidence;

    f.    Overlooking false and misleading statements made by police personnel.

87.    On or about December 29, 2021, Plaintiff demanded that Defendants NCDA, Donnelly, and Does #21-30 take immediate action to rectify the grave injustice committed by Defendants upon Plaintiff. Plaintiff demanded that his plea be vacated, and all charges be dismissed. In response to Plaintiff's demand, the NCDA's Office took steps to unseal the record of Cagan's criminal prosecution. However, upon learning of a lawsuit initiated against Nassau County, and in accordance with the policy and/or practice and/or procedure of Nassau County to shield itself from civil liability through the abuse of the criminal procedure process, the NCDA's Office reversed course and refused to perform its legal obligation to vacate wrongful and/or illegal pleas and/or resolutions such as the one against Cagan.

88.    Defendants NCDA, Donnelly, and Does #21-30 did refuse to perform their legal obligation to vacate Plaintiff's wrongful and/or illegal plea and/or resolution. On February 24, 2022, NCDA transmitted a letter to Plaintiff advising as follows:

> This Office is unable to continue the Conviction Integrity review we initiated following your request on December 28, 2021, due to the civil lawsuit Mr. Cagan filed last month against this Office. Accordingly, we are withdrawing the unsealing application we previously submitted to Judge Alexander. To the extent that you have further questions, please direct them to the County Attorney.

89.    In complete dereliction of their legal duty, Defendants NCDA, Donnelly, and Does #21-30 have refused to take any further action to exonerate Plaintiff, an innocent man. A prosecutor's primary responsibility is to seek justice. Exoneration of the innocent who have been falsely accused of a crime is a primary responsibility of the prosecutor. "The responsibility of a public prosecutor differs from that of the usual advocate; it is to seek justice, not merely to

convict." *EC 7-13*; *see also People v. Miller*, 149 A.D.2d 439 (2nd Dept. 1989); *See also Rule 3.8*, Special Responsibilities of Prosecutors and Other Government Lawyers.

90.     Rule 3.8 provides as follows:

(a) A prosecutor or other government lawyer shall not institute, cause to be instituted or maintain a criminal charge when the prosecutor or other government lawyer knows or it is obvious that the charge is not supported by probable cause.

(b) A prosecutor or other government lawyer in criminal litigation shall make timely disclosure to counsel for the defendant or to a defendant who has no counsel of the existence of evidence or information known to the prosecutor or other government lawyer that tends to negate the guilt of the accused, mitigate the degree of the offense, or reduce the sentence, except when relieved of this responsibility by a protective order of a tribunal.

(c) When a prosecutor knows of new, credible and material evidence creating a reasonable likelihood that a convicted defendant did not commit an offense of which the defendant was convicted, the prosecutor shall within a reasonable time:
(1) disclose that evidence to an appropriate court or prosecutor's office; or
(2) if the conviction was obtained by that prosecutor's office,
(A) notify the appropriate court and the defendant that the prosecutor's office possesses such evidence unless a court authorizes delay for good cause shown;
(B) disclose that evidence to the defendant unless the disclosure would interfere with an ongoing investigation or endanger the safety of a witness or other person, and a court authorizes delay for good cause shown; and
(C) undertake or make reasonable efforts to cause to be undertaken such further inquiry or investigation as may be necessary to provide a reasonable belief that the conviction should or should not be set aside.

(d) When a prosecutor knows of clear and convincing evidence establishing that a defendant was convicted, in a prosecution by the prosecutor's office, of an offense that the defendant did not commit, the prosecutor shall seek a remedy consistent with justice, applicable law, and the circumstances of the case.

(e) A prosecutor's independent judgment, made in good faith, that the new evidence is not of such nature as to trigger the obligations of sections (c) and (d), though subsequently determined to have been erroneous, does not constitute a violation of this rule.

91.    Defendants NCDA, Donnelly, and Does #21-30's refusal to act further evidences their complicity in the cover up of Defendants' scheme and demonstrates an attempt to protect Defendants for having falsified evidence and providing perjured testimony.

92.    That Defendants NCDA, Donnelly, and Does #21-30's decision was specifically made in attempt to foreclose Plaintiff's ability to maintain his 42 USC § 1983 suit and further violate Plaintiff's rights and to protect Defendants from liability.

93.    The above evidences an ongoing scheme and/or practice and/or policy of Defendants to violate Plaintiff's rights guaranteed under the U.S. Constitution.

## AS AND FOR A FIRST COUNT
### 42 U.S.C. § 1983 – False Arrest and Unlawful Search & Seizure
### (*Against All Defendants*)

94.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in those paragraphs of the Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

95.    That the aforesaid arrest and imprisonment of Plaintiff by Defendants in their capacities as law enforcement was under the color of State Law, without any reasonable cause or belief that Plaintiff was in fact guilty of the crimes for which he was charged.

96.    That said Defendants, their agents, servants and employees falsely arrested and illegally imprisoned Plaintiff and intentionally subjected Plaintiff to confinement which Plaintiff was conscious of, and said confinement was not otherwise privileged or consented to by Plaintiff.

97.    That, by reason of the aforesaid false arrest and imprisonment caused willfully and maliciously by Defendants, their agents, servants, or employees, Plaintiff was wrongfully deprived of his rights and privileges and benefits as provided to him under the Constitution of the

PF/D244302/FL3160

United States of America, was subjected to pain and suffering, great indignities, ridicule, scorn, loss of freedom, humiliation, mental distress, was prevented from attending his usual activities, was injured in his reputation in the community, and was further caused to incur monetary expense, including legal fees.

98.     That the aforesaid false arrest and imprisonment of Plaintiff violated the Fourth Amendment of the United States Constitution.

99.     That Defendants committed the foregoing acts willfully and with malicious disregard for Plaintiff's rights and are therefore liable to Plaintiff for compensatory as well as punitive damages.

100.    As a proximate result of Defendants' intentional and malicious actions, Plaintiff Tod S. Cagan was greatly humiliated, injured in his reputation, caused to incur attorney's fees, associated legal expenses, and other special damages, and has suffered great mental anguish causing damages, all to Plaintiff's damage, in an amount to be determined at trial but not less than TEN MILLION DOLLARS ($10,000,000.00), as well as punitive damages, costs, attorneys' fees, and any other relief this Court may find just and proper.

## AS AND FOR A SECOND COUNT
### 42 U.S.C. § 1983 – Failure to Intervene
#### (*Against All Defendants*)

101.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in those paragraphs of the Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

102.    On or about June 17, 2018, Plaintiff was subjected to false arrest and unlawful search and seizure of Plaintiff's person and home at the hands of Defendants.

PF/D244302/FL3160

103.    Despite Defendants having irrefutable evidence that Defendant Rittenhouse and Philbin falsified evidence and committed perjury, Defendants nonetheless arrested Plaintiff.

104.    Each of the Defendants new and/or deliberatively ignored the fact that the false accusations, detainment, false arrest, seizure, and illegal search of Plaintiff's home violated the rights guaranteed to Plaintiff under the First, Fourth, Fifth, and Fourteenth Amendments of the U.S. Constitution and 42 U.S.C. § 1983.

105.    Each of the said Defendants had the authority, ability, and concurrent duty under 42 U.S.C. § 1983 to prevent the false arrest, wrongful detainment, and illegal search of Plaintiff, yet neglected to prevent said violations from occurring and, further, failed to intervene to protect or aid Plaintiff when such violations did, in fact, occur.

106.    Specifically, each and every one of the Defendants had the opportunity and responsibility to prevent the wrongful detainment and abuse of process against Plaintiff because each Defendant had actual notice of the wrongful actions of the other Defendants at the scene of the incident.

107.    Defendants had the power to prevent the continued due process violations against Plaintiff yet failed to prevent or dismiss the fabricated charges against Plaintiff, or to protect Plaintiff from the unwarranted penalties that followed from the charges against him.

108.    As a direct consequence of the actions of Defendants acting in furtherance of their duties as agents of their respective municipalities and agencies, Plaintiff suffered injuries, including but not limited to, stigmatizations, embarrassment, loss of liberty, and the infringement of his rights guaranteed to him under the U.S. Constitution.

109.    As a direct consequence of the actions of Defendants, Plaintiff suffered loss of standing in the community, loss of time, loss of freedom, loss of quality of life, damage to his

PF/D244302/FL3160

name and reputation, special damages, attorney's fees, incidental fees/costs, loss of property, and other financial impairments.

110.    That, by reason of the foregoing, Plaintiff suffered and continues to suffer irreparable injury and monetary damages, in excess of TEN MILLION DOLLARS ($10,000,000.00), as well as punitive damages, costs, attorneys' fees, and any other relief this Court may find just and proper.

### AS AND FOR A THIRD COUNT
**42 U.S.C. § 1983 – Malicious Prosecution**
(*Against All Defendants*)

111.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in those paragraphs of the Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

112.    Defendants' commencement and/or continuation of a criminal proceeding against Plaintiff by the lodging of false charges, wrongful arrest, and abuse of process culminated into the unjustifiable and malicious prosecution of Plaintiff by Defendants NCDA, Singas, and Does #21-30.

113.    Defendants Rittenhouse, Philbin, Village, VFPD, Hall, Horne, Kennedy, Falzone, Geniale, Roe, Williams, Does #1-10, County, NCPD, and Does #11-20 provided false and fabricated information which was used by Singas and Does #21-30 of the Nassau County District Attorney's Office to prosecute Plaintiff for false, erroneous, and unsubstantiated charges.

114.    Defendants Rittenhouse, Philbin, Village, VFPD, Hall, Horne, Kennedy, Falzone, Geniale, Roe, Williams, Does #1-10, County, NCPD, and Does #11-20 provided Singas and Does #21-30 with false information, and knew that said information would be used to prosecute Plaintiff.

PF/D244302/FL3160

115.    Defendants Rittenhouse, Philbin, Village, VFPD, Hall, Horne, Kennedy, Falzone, Geniale, Roe, Williams, Does #1-10, County, NCPD, and Does #11-20's actions constituted unreasonable and unlawful behavior, as well as abuse of process, abuse of authority, and violations of Plaintiff's Fourth, Fifth, Sixth, and Fourteenth Amendment rights.

116.    As a result of Defendants Rittenhouse, Philbin, Village, VFPD, Hall, Horne, Kennedy, Falzone, Geniale, Roe, Williams, Does #1-10, County, NCPD, and Does #11-20's actions, Defendants NCDA, Singas, and Does #21-30 conducted said proceedings against Plaintiff based on the false and fabricated evidence.

117.    Defendants Rittenhouse, Philbin, Village, VFPD, Hall, Horne, Kennedy, Falzone, Geniale, Roe, Williams, Does #1-10, County, NCPD, and Does #11-20, therefore, caused Defendants NCDA, Singas, and Does #21-30 to breach their duty under 42 U.S.C. § 1986 to prevent the commission of the civil rights violations perpetrated against Plaintiff including violations of 42 U.S.C. § 1983.

118.    Defendants NCDA, Singas, Donnelly, and Does #21-30 instituted and maintained criminal charges against Plaintiff knowing that he was completely innocent.

119.    Said abuse of process has continued by Defendants NCDA, Singas, Donnelly, and Does #21-30's failure to adequately investigate and properly discipline Defendants Rittenhouse, Philbin, Village, VFPD, Hall, Horne, Kennedy, Falzone, Geniale, Roe, Williams, Does #1-10, County, NCPD, and Does #11-20 for their actions against Plaintiff.

120.    Specifically, NCDA, Singas, and Does #21-30 failed to investigate and verify the veracity of the charges brought against Plaintiff, despite the blatant lack of any probable cause for falsely accusing Plaintiff.

PF/D244302/FL3160

121.    Rather, the false and fabricated allegations made against Plaintiff were based on actual malice harbored by Defendants Rittenhouse, Philbin, Village, VFPD, Hall, Horne, Kennedy, Falzone, Geniale, Roe, Williams, Does #1-10, County, NCPD, and Does #11-20 and prosecuted on their behalf by NCDA, Singas, and Does #21-30.

122.    Each knew that the charges were false and only sought to press the charges to mask and coverup the abuses, violations, and wrongful acts which they had taken against Plaintiff in order to protect Defendant Rittenhouse's employment with the City of New York and NYPD.

123.    The action taken by Defendants to create a false narrative; falsely accuse Plaintiff; provide false information to NCDA, Singas, and Does #21-30; maliciously prosecute; harass; and fully inconvenience Plaintiff with false criminal charges is an abuse of process, in that using the courts and judicial process to harass, intimidate, inconvenience, and further damage Plaintiff despite no significant evidence for prosecuting the baseless charges.

124.    The false and fabricated allegations made against Plaintiff should have been dismissed in Plaintiff's favor. However, in direct contravention of NCDA, Donnelly, and Does #21-30's legal, professional, and ethical obligation to overturn Plaintiff's prior plea and dismiss all charges, Defendants NCDA, Donnelly, and Does #21-30 have refused to do so. This is a clear attempt by Defendants to coerce and dissuade Plaintiff from enforcing his rights under the U.S. Constitution through the instant litigation. NCDA, Donnelly, and Does #21-30 specifically cited the ongoing litigation as a reason for refusing to take any further action despite knowing full well that Plaintiff is completely innocent.

PF/D244302/FL3160

125.    Defendants NCDA, Donnelly, and Does #21-30 have refused to vacate Plaintiff's ACD disposition and dismiss the charges against Plaintiff despite having full knowledge of Plaintiff's innocence and the falsity of the charges.

126.    As a result of said abuse of process, Plaintiff has suffered continued emotional damage, including prolonged stress and anxiety, fear, and frustration, and has been harmed monetarily in his incurring of attorney fees, and other expenses incurred in the attempt to clear Plaintiff from these false and maliciously imposed criminal charges.

127.    That by reason of the foregoing, Plaintiff suffered and continues to suffer irreparable injury and monetary damages, in excess of TEN MILLION DOLLARS ($10,000,000.00), as well as punitive damages, costs, attorneys' fees, and any other relief this Court may find just and proper.

### AS AND FOR A FOURTH COUNT
### 42 U.S.C. § 1983 – Abuse of Process
### (*Against All Defendants*)

128.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in those paragraphs of the Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

129.    Defendants intentionally, recklessly and maliciously filed and/or caused to be filed, a false, inaccurate, and/or misleading criminal felony complaint against Plaintiff.

130.    The false criminal felony complaint lodged by Defendants against Plaintiff was done with knowledge that the facts contained therein were false, misleading, and/or otherwise inaccurate.

PF/D244302/FL3160

131.    Defendants filed said false criminal felony complaint against Plaintiff with an ulterior purpose/motive to subject Plaintiff to punishment without just cause and in order to protect Defendant Rittenhouse.

132.    Defendants subjected Plaintiff to the criminal justice system without just cause or reason. Defendants abused the criminal justice system in falsely arresting, falsely charging, and falsely prosecuting Mr. Cagan in an attempt to protect Defendant Rittenhouse and satisfy their personal goals of covering up their wrongdoing and to further their own purposes of exercising their privilege for their own warped sense of power.

133.    Defendants created false and fabricated statements which included, *inter alia*, the following by Defendant Rittenhouse:

> Tod offer [sic] us a ride back to Mike's house on his boat. We accepted the offer for the ride. We left Jeremy's about 1:00 a.m. We got back to Tod's house. We docked his boat at that location. I knew it was on Sportsman Ave. in Freeport, because he lives across the street from Mike. We talked for a few more minutes, then Tod insisted we come into his home. We went in and sat at a table in his kitchen. He offered me a Woodchuck Cider. I drank a little of it. It didn't taste good. I got up to go outside and smoke a cigarette. Tod, said "I got a vape." He handed me a large brown metallic vape. I asked him, "It's just tobacco?". Tod said "Yes." I asked him again, "I am a cop. It's just tobacco, right?". Tod responds, "Yes." . . . After I exhaled the vapors, I immediately felt sick. I started getting a tiggling [sic] sensation in my hands and arms. I was feeling nauseated, vision obscured and dizzy. . . When I said I need to go to the hospital, Tod said, "It only medical marijuana, its legal." When Tod said that, I told Mike I need an ambulance.

134.    Defendants created false and fabricated statements which included, *inter alia*, the following by Defendant Philbin:

> At one point Cagan offered a vape pen to use instead of going outside. I then heard Greg ask several times – it is only tobacco right – Cagan answered "yes just tobacco". Then Greg took he pen and started to vape.
> Within moments Greg left to go to the bathroom. When Greg returned he told me he felt sick. I noticed he looked green.

PF/D244302/FL3160

Greg and I were talking about going to the hospital. At that point Cagan said it was "medical marijuana vape". At that point I took Greg to my house across the street and called for ambulance.

135.    Moreover, Defendants invented and fabricated circumstances which were used to support the false charges in the charging instrument that was used to prosecute Plaintiff by Defendants NCDA, Singas, and Does #21-30. The falsehoods which were included in the charging instrument are provided, included but were not limited to, *inter alia*, the above-mentioned statements.

136.    Defendants' use of criminal process for the aforementioned improper purpose amounted to an abuse of said process, which was initiated and used to the detriment of Plaintiff solely for a purpose that was/is outside the legitimate ends of the legal process. The purpose behind Defendants' actions was to protect Defendant Rittenhouse and to harass, intimidate, coerce, silence, and punish Plaintiff.

137.    Defendants did not initiate the arrest and prosecution of Plaintiff as a result of actual knowledge that a crime was committed. Defendants' clear intention was to protect Defendant Rittenhouse, a NYPD officer, because he had smoked CBD and falsely arrest and falsely prosecute Plaintiff and cause harm to Plaintiff without proper motive, excuse, or justification of any kind.

138.    Defendants did nothing to stop the criminal proceedings which amounted to an abuse of said process, which was initiated and used to the detriment of Plaintiff solely for a purpose that was/is outside the legitimate ends of the criminal process.

139.    As a direct consequence of the actions of Defendants, acting in furtherance of their duty as agents of the City of New York, Incorporated Village of Freeport, and Nassau

County, Plaintiff suffered injuries, including but not limited to, stigmatization, embarrassment, loss of liberty, and the infringement of his rights guaranteed to him under the U.S. Constitution.

140.     Defendant Rittenhouse, with the aid of other named Defendants, falsified evidence and committed perjury in order to cover up the fact that Defendant Rittenhouse had taken a vape pen from a stranger at a bar as well as to protect himself from being terminated from his employment.

141.     Defendants NCDA, Donnelly, and Does #21-30's refusal to act also evidences its complicity in the cover up of Defendants' scheme and demonstrates an attempt to protect Defendants for having falsified evidence and providing perjured testimony.

142.     Defendants NCDA, Donnelly, and Does #21-30's decision was specifically made in an attempt to foreclose Plaintiff's ability to maintain his 42 USC § 1983 suit and, further, violate Plaintiff's rights and to protect Defendants from liability and, further, evidencing an ongoing scheme and/or practice and/or policy of Defendants to violate Plaintiff's rights guaranteed under the U.S. Constitution.

143.     As a direct consequence of the actions of Defendants, Plaintiff suffered loss of standing in the community, loss of time, loss of freedom, loss of quality of life, and loss of regular income, damage to name and reputation, special damages, attorney's fees, incidental fees/costs, loss of property, and other financial impairments.

144.     That by reason of the foregoing, Plaintiff suffered and continues to suffer irreparable injury and monetary damages, in excess of TEN MILLION DOLLARS ($10,000,000.00), as well as punitive damages, costs, attorneys' fees, and any other relief this Court may find just and proper.

PF/D244302/FL3160

## AS AND FOR A FIFTH COUNT
### 42 U.S.C. § 1983 – Fabricating of Evidence
***(Against Defendants Rittenhouse, Philbin, Village, VFPD, Hall, Horne, Kennedy, Falzone,
Geniale, Roe, Williams, Does #1-10, County, NCPD, and Does #11-20)***

145.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in

those paragraphs of the Complaint marked and numbered previously and/or herein with the same

force and effect as if more fully set forth at length below.

146.    Defendants Rittenhouse, Philbin, Village, VFPD, Hall, Horne, Kennedy, Falzone,

Geniale, Roe, Williams, Does #1-10, County, NCPD, and Does #11-20 fabricated evidence

against Plaintiff to deprive Plaintiff of his First, Fourth, Fifth, and Fourteenth Amendment rights,

and jointly caused such deprivation of rights by acting in concert to unlawfully charge Plaintiff

with crimes that he did not commit.

147.    Defendants Rittenhouse, Philbin, Village, VFPD, Hall, Horne, Kennedy, Falzone,

Geniale, Roe, Williams, Does #1-10, County, NCPD, and Does #11-20 further deprived Plaintiff

of his due process rights, specifically by falsifying facts in the Felony Complaint filed against

Mr. Cagan. In said charging instrument, which was prepared by Defendant Hall, it states the

following false information:

> On 6 - - 17 – 18 at 0130 hrs, the complainant Gregory Rittenhouse was at 178B
> Sportsman, Ave., Freeport, NY. The defendant Tod Cagan did give the
> complainant a vape containing THD (Tetrahydrocannabinol) without his consent.
> This caused the complainant to have nausea, dizziness and blurred vision.

148.    All of the above factual allegations prepared by Defendant Hall are false. These

false allegations, and others, led to the false arrest of Plaintiff, Plaintiff being accused of crimes

which he did not commit, and Plaintiff's false prosecution. Defendants' narration of the false and

fabricated allegations against Plaintiff were likely to influence a jury's decision if presented at

trial. This information was forwarded to Singas and/or an Assistant District Attorney for

PF/D244302/FL3160

Defendant NCDA with the intention of it to be used to unlawfully prosecute Plaintiff. Moreover, the falsity of these allegations was evidenced by the later sworn testimony of Defendant Geniale and a contemporaneously prepared Aided Report of Defendant Falzone which was never disclosed by Defendants NCDA, Singas, and Does #21-30.

149.    When Defendants NCDA, Donnelly, and Does #21-30 were confronted with the falsity of the charges they did refuse to take any action to exonerate Plaintiff.

150.    The actions by Defendants denied Plaintiff his liberty and due process rights. These rights are guaranteed to Plaintiff under the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

151.    As a direct consequence of the actions of Defendants, Plaintiff suffered loss of standing in the community, loss of time, loss of freedom, loss of quality of life, and loss of regular income, damage to his name and reputation, special damages, attorney's fees, incidental fees/costs, loss of property, and other financial impairments.

152.    Defendants knew or should have known that the wrongful detainment, false arrest, wrongful imprisonment, and unlawful prosecution of Mr. Cagan violated Plaintiff's rights, guaranteed to him under the Fourth, Fifth, Sixth, and Fourteenth Amendments and 42 U.S.C. § 1983.

153.    Defendants had the authority, ability, and concurrent duty under 42 U.S.C. § 1983 to prevent the false arrest, wrongful detainment, and unlawful prosecution of Plaintiff, yet these Defendants neglected to prevent said violations from occurring and, further, failed to intervene to protect or aid Plaintiff when such violations did in fact occur.

154.    Defendants knew or should have known that the fabricated accusations against Mr. Cagan were violative of his Fourth, Fifth, and Fourteenth Amendment rights to due process,

PF/D244302/FL3160

and were tantamount to the unfair treatment that he suffered at the hands of each and every Defendant, in violation of Plaintiff's fundamental rights under the Constitution.

155.    As a direct consequence of the actions of the Defendants, Plaintiff suffered loss of standing in the community, loss of time, loss of freedom, loss of quality of life, and loss of regular income, damage to his name and reputation, special damages, attorney's fees, incidental fees/costs, loss of property, and other financial impairments.

156.    That by reason of the foregoing, Plaintiff suffered and continues to suffer irreparable injury and monetary damages, in excess of TEN MILLION DOLLARS ($10,000,000.00), as well as punitive damages, costs, attorneys' fees, and any other relief this Court may find just and proper.

**AS AND FOR A SIXTH COUNT**
**42 U.S.C. § 1983 – Brady Violation**
***(Against All Defendants)***

157.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in those paragraphs of the Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

158.    Plaintiff alleges numerous Constitutional violations under 42 U.S.C. § 1983 which include, but are not limited to: fabrication of evidence, *Brady* violations in the withholding of exculpatory evidence, *Giglio* violations, destruction of evidence, failure to follow proper procedures under the Due Process law pursuant to the Constitution of the United States, failure to intervene, falsely testifying, falsely arresting, falsely detaining, falsely imprisoning Plaintiff for an unjustified prolong period, conspiracy, abuse of process, and malicious prosecution of Plaintiff, all of which support Plaintiff's claims for Constitutional violations.

PF/D244302/FL3160

159.    Defendants fabricated evidence as it relates to the incidents involving Plaintiff, which constituted violations of his Constitutional and civil rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments. This conduct was intentional and malicious and based on Defendants' intent and desire to deny Plaintiff the right to a fair trial, to examine the evidence against him, to properly prepare a defense, to be free from unlawful incarceration, and to not be wrongfully and maliciously subjected to the prosecutorial process.

160.    Defendants withheld evidence in violation of *Brady v. Maryland,* 373 US 83 (1963), as it relates to the incidents involving Plaintiff, which constituted violations of his constitutional rights under the Fifth, Sixth, and Fourteenth Amendments. Defendants' conduct was intentional and malicious and based on a desire to subject Plaintiff to prosecution and prolonged loss of liberty and, thus, ultimately deny Plaintiff his Due Process and liberty rights as ascribed to him under the Constitution.

161.    Defendants concealed evidence related to the incidents involving Plaintiff, which constituted *Brady* violations and Due Process violations pursuant to the Fifth, Sixth, and Fourteenth Amendments of the Constitution. Defendants' conduct was intentional and malicious and based on a wish to deny Plaintiff his Fifth and Sixth Amendment rights to Due Process, to examine the evidence against him, the right to a fair trial, and to his liberty rights under the Constitution.

162.    Defendants deprived Plaintiff of his Fourth, Fifth, Sixth, and Fourteenth Amendment rights, and caused such deprivation of rights by falsely detaining, unlawfully accusing, wrongfully arresting, and falsely imprisoning Plaintiff. Said acts were motivated by a sadistic desire to harm Plaintiff, protect and cover up the improper conduct of Defendant

PF/D244302/FL3160

Rittenhouse, and to violate Plaintiff's constitutional and civil rights and thus deny him access to equal rights under the law.

163.   Plaintiff was detained, arrested, and maliciously prosecuted by Defendants in an attempt to deny him his basic right to freedom and liberty.

164.   Defendants failed to follow proper procedures, policies, and regulations as it relates to the incidents involving Plaintiff which constitutes violations of his rights under the Fourth, Sixth, and Fourteenth Amendments. Defendants' conduct was intentional and malicious and based on the cruel motivation to wrongfully prosecute and deprive Plaintiff of his liberty in violation of his rights as guaranteed under the Constitution and for the unlawful purpose of protecting Defendant Rittenhouse.

165.   Defendants individually and collectively knew at the time of Plaintiff's arrest, and at all times since then, that the evidence they had in connection with the charges brought against Plaintiff were false and inconsistent with and insufficient to establish his guilt with respect to any of the crimes charged.

166.   In arresting, detaining, interrogating, and prosecuting Plaintiff, each of the Defendants knew or should have known they were violating federal law and Plaintiff's Constitutional and civil rights set forth herein, and that they had failed to prevent the same and, therefore, acted in concert to harm Plaintiff.

167.   Defendants withheld information and conspired to cover up the illegal acts set forth herein, despite the truth being apparent. Defendants NCDA, Singas, and Does #21-30 offered and were allowed to provide false documents, false statements, and perjured testimony with the full knowledge and support of Defendants Rittenhouse, Philbin, Village, VFPD, Hall,

PF/D244302/FL3160

Horne, Kennedy, Falzone, Geniale, Roe, Williams, Does #1-10, County, NCPD, and Does #11-20.

168.    Defendants NCDA, Donnelly, and Does #21-30, when confronted with the falsity of the charges, did refuse to take any action to exonerate Plaintiff, thus continuing the ongoing Constitutional violations against Plaintiff.

169.    As a direct result of Defendants' unlawful actions of each of them, Plaintiff was wrongfully subjected to criminal proceedings, maliciously prosecuted, forced to endure multiple mandatory court appearances, face potential incarceration, and coerced into taking a plea to an ACD, all based upon false premises.

170.    As a direct and proximate result of the aforesaid acts of Defendants and each of them, Plaintiff suffered great harm, mental anguish, and violation of rights from then until now and he will continue to so suffer in the future having been greatly humiliated and mentally injured, as a result of the foregoing unlawful acts of Defendants.

171.    Plaintiff was forced to incur great expense and special damages to date for defending against the false criminal charges, attorneys' fees, investigation expenses, and other expenses in clearing his name against the unfounded and unwarranted allegations by Defendants which have been and continue to be a serious burden to Plaintiff.

172.    Plaintiff is forced to incur great expense and special damages for now having to overturn and defend against the false criminal charges as a result of Defendants' continuing actions and NCDA, Donnelly, and Does #21-30 refusal to take any action to exonerate Plaintiff and/or to investigate Rittenhouse, Philbin, and the various law enforcement personnel involved in the arrest and criminal prosecution of Plaintiff based upon false and fabricated evidence.

PF/D244302/FL3160

173.    That by reason of the foregoing, Plaintiff suffered and continues to suffer irreparable injury and monetary damages, in excess of TEN MILLION DOLLARS ($10,000,000.00), as well as punitive damages, costs, attorneys' fees, and any other relief this Court may find just and proper.

### AS AND FOR A SEVENTH COUNT
*Monell*

174.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in those paragraphs of the Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

**Failure to Supervise and Failure to Train**

175.    Defendants Village, VFPD, NYC, NYPD, County, NCPD, and NCDA were responsible for supervising, overseeing, and controlling their respective subordinates.

176.    Defendants Village, VFPD, NYC, NYPD, County, NCPD, and NCDA had an express and/or implied duty to provide a reasonably safe environment for their citizens, including Plaintiff. At a minimum, they had a duty to keep him from being falsely arrested and maliciously prosecuted by their employees, which was foreseeable based upon past instances of misconduct, which were known to Village, VFPD, NYC, NYPD, County, NCPD, and NCDA.

177.    Defendants Village, VFPD, NYC, NYPD, County, NCPD, and NCDA had an express and/or implied duty to provide a reasonably safe environment for their citizens, including Plaintiff. At a minimum, they had a duty to assure that their employees did not fabricate evidence, commit perjury, wrongfully and falsely arrest Plaintiff, and impermissibly withhold exculpatory evidence in violation of *Brady v. Maryland*, which was foreseeable based upon past instances of misconduct, which were known to Village, VFPD, NYC, NYPD, County, NCPD, and NCDA.

PF/D244302/FL3160

178.   Despite having this knowledge, Defendants Village, VFPD, NYC, NYPD, County, NCPD, and NCDA failed to take any remedial measures to prevent the aforementioned violations of Plaintiff's Constitutional rights.

179.   The countenancing of this behavior created an environment within the VFPD, NYPD, NCPD, and NCDA wherein members were allowed to continue with their behavior, which led to the Constitutional rights of citizens being violated, including Plaintiff.

180.   Defendants Village, VFPD, NYC, NYPD, County, NCPD, and NCDA intentionally failed to adequately supervise, control, oversee, train, and/or monitor their employees and members, who had a history of engaging in official misconduct, and failed to implement measures to prevent their employees and members from conspiring with each other to cover up their official misconduct.

181.   Defendants Village, VFPD, NYC, NYPD, County, NCPD, and NCDA intentionally failed to adequately supervise, control, oversee, train, and/or monitor their employees and members from conspiring with each other to cover up their official misconduct and prevent them from continuously violating the Constitutional rights of individual citizens, including Plaintiff.

182.   Defendants Village, VFPD, NYC, NYPD, County, NCPD, and NCDA negligently hired, retained, and/or supervised their employees and members when they knew or should have known that they posed a threat to individuals.

183.   Defendants Village, VFPD, NYC, NYPD, County, NCPD, and NCDA knew or should have known of their employees and members' propensity for the conduct which caused Plaintiff's injuries, prior to the occurrence of the injuries.

PF/D244302/FL3160

184.    At all times relevant hereto, Defendants' actions were willful, wanton, malicious, reckless, and/or outrageous in their disregard for the rights and safety of Plaintiff.

185.    Defendants Village, VFPD, NYC, NYPD, County, NCPD, and NCDA were aware that there was a substantial likelihood that permitting their employees and members to carry on their regular duties would deprive the public of their civil rights, but failed to take adequate measures to resolve the wrong.

186.    Defendants Village, VFPD, NYC, NYPD, County, NCPD, and NCDA's failure and refusal to adequately investigate their employees' actions, acquiescence in Defendants' conduct, failure to take any remedial action against Defendants, allowing Defendants to remain employed as police officers and/or assistant district attorneys, gross negligence in their supervision of Defendants, and deliberate indifference to the rights of others by failing to act on information that Constitutional rights were being violated, subjects Defendants to supervisory liability for the crime and Constitutional violations perpetrated against Plaintiff.

187.    That by reason of the foregoing, Plaintiff suffered and continues to suffer irreparable injury and monetary damages, in excess of TEN MILLION DOLLARS ($10,000,000.00), as well as costs, attorneys' fees, and any other relief this Court may find just and proper.

**<u>Custom, Policy, and Practice</u>**

188.    It was the custom, policy, and practice of Defendants Village, VFPD, NYC, NYPD, County, NCPD, and NCDA to tolerate, condone, and encourage constitutional violations, such as those alleged by Plaintiff above, by failing to properly punish, charge, reprimand, and investigate allegations and incidents of misconduct by their employees and members.

189.    Employees and members of Defendants Village, VFPD, NYC, NYPD, County,

PF/D244302/FL3160

NCPD, and NCDA, such as the Individual Defendants in this action, were aware at all times alleged in this Complaint that their unconstitutional conduct would not be investigated or questioned, and that they would receive no reprimand or be punished for their conduct.

190.    Employees of Defendants Village, VFPD, NYC, NYPD, County, NCPD, and NCDA, such as the Individual Defendants in this action, were aware at all times alleged in this Complaint that their unconstitutional conduct would not be investigated or questioned, and that they would receive no reprimand or be punished for their conduct and, further, that they would be indemnified from civil liability regardless of the illegality or unconstitutionality of their actions.

191.    By failing to supervise, train, and reprimand such Village, VFPD, NYC, NYPD, County, NCPD, and NCDA employees and members, Defendants Village, VFPD, NYC, NYPD, County, NCPD, and NCDA caused the injuries to Plaintiff through the actions and inactions of the Individual Defendants.

192.    By maintaining a *de facto* policy of automatic indemnification, Defendants Village, VFPD, NYC, NYPD, County, NCPD, and NCDA caused the injuries to Plaintiff through the actions and inactions of the Individual Defendants.

193.    It was the custom, policy, and practice of Defendants Village, VFPD, NYC, NYPD, County, NCPD, and NCDA to blatantly ignore complaints and/or widespread allegations of malfeasance in order to shield Defendants VFPD, NYPD, NCPD, and NCDA from receiving any bad press that would be generated from an investigation of police misconduct and/or misconduct by assistant district attorneys.

194.    This custom, policy, and practice of Defendants Village, VFPD, NYC, NYPD, County, NCPD, and NCDA to ignore complaints and/or widespread allegations of assault and

other malfeasance created an environment where foreseeable constitutional violations by their employees and members were rampant, including the violations of Plaintiff's constitutional rights.

195.    In furtherance of this custom and policy, and in order to protect and shield members of police departments such as the Individual Defendants, Defendants County and NCDA instituted a policy of demanding and coercing individuals to accept a disposition of an ACD to dispose of their criminal matters as evidenced by the fact that when confronted with irrefutable evidence of Plaintiff's innocence, Defendants NCDA, Donnelly, and Does #21-30 refused to take any action to exonerate Plaintiff and specifically cited Plaintiff's law suit as a basis for their refusal to act.

196.    Defendants Village, VFPD, NYC, NYPD, County, NCPD, and NCDA's failure to take action against their employees and members involved in this incident and in other similar incidents was part of a custom, practice, and procedure of neglect and deliberate indifference that directly caused the injuries to Plaintiff.

197.    As authorized representatives of Defendants Village, VFPD, NYC, NYPD, County, NCPD, and NCDA, the employees and members' conduct of fabrication of evidence, illegal arrests or threats of arrest without probable or reasonable cause, searches and seizure of arrestees, malicious prosecutions and withholding of *Brady* material, constituted a custom, policy, and practice which renders Defendants Village, VFPD, NYC, NYPD, County, NCPD, and NCDA liable to Plaintiff as a "Person" acting under the color of state law.

198.    Defendants Village, VFPD, NYC, NYPD, County, NCPD, and NCDA are, therefore, liable for violations of Plaintiff's Constitutional rights as caused by the Individual Defendants, as described in more detail in the foregoing paragraphs, and Plaintiff has suffered

damages therefrom.

199.    That, by virtue of Defendants Village, VFPD, NYC, NYPD, County, NCPD, and NCDA's failure and refusal to adequately investigate the Individual Defendants' actions, acquiescence in the Individual Defendants' conduct, failure to take any remedial action against the Individual Defendants, allowing the Individual Defendants to remain employed, gross negligence in their supervision of the Individual Defendants, and deliberate indifference to the rights of others by failing to act on information that constitutional rights were being violated by the Individual Defendants, Village, VFPD, NYC, NYPD, County, NCPD, and NCDA, which employed these Individual Defendants and policymakers during the relevant time period, exhibited a *de facto* custom, policy, or usage of unconstitutional conduct sufficient for the imposition of municipal liability under *Monell v. Dept. of Social Services*, 436 US. 658 (1978).

200.    As a proximate result of Defendants' customs, policies, and practices for creating an environment that tolerates, encourages, and condones such constitutional violations, Plaintiff was caused to be unlawfully seized, falsely arrested, and maliciously prosecuted, placed in substantial fear of his liberty, sustained bodily injuries, mental torment, night terrors and nightmares, depression, fear, loss of enjoyment of life, and other physical, mental, and psychological injuries, damage to his reputation, other special damages, has suffered great mental anguish, and has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling, all to Plaintiff's damage, in an amount to be determined at trial but not less than TEN MILLION DOLLARS ($10,000,000.00), as well as costs, attorneys' fees, and any other relief this Court may find just and proper.

## **JURY DEMAND**

201.    Plaintiff demands a Trial by Jury of all causes of actions so triable.

PF/D244302/FL3160

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendants as follows:

A.      Under the First Count, in the amount of TEN MILLION DOLLARS ($10,000,000.00) plus punitive damages, costs, and attorney's fees;

B.      Under the Second Count, in the amount of TEN MILLION DOLLARS ($10,000,000.00) plus punitive damages, costs, and attorney's fees;

C.      Under the Third Count, in the amount of TEN MILLION DOLLARS ($10,000,000.00) plus punitive damages, costs, and attorney's fees;

D.      Under the Fourth Count, in the amount of TEN MILLION DOLLARS ($10,000,000.00) plus punitive damages, costs, and attorney's fees;

E.      Under the Fifth Count, in the amount of TEN MILLION DOLLARS ($10,000,000.00) plus punitive damages, costs, and attorney's fees;

F.      Under the Sixth Count, in the amount of TEN MILLION DOLLARS ($10,000,000.00) plus punitive damages, costs, and attorney's fees;

G.      Under the Seventh Count, in the amount of TEN MILLION DOLLARS ($10,000,000.00) plus costs and attorney's fees;

H.      Such other and further relief as the Court deems just and proper.

Dated:  Garden City, New York
        April 11, 2022

Respectfully Submitted,
**THE RUSSELL FRIEDMAN LAW GROUP, LLP**
*Attorneys for Plaintiff, Tod S. Cagan*

By:      /s/*Charles Horn*
         Charles Horn
         400 Garden City Plaza, Suite 500
         Garden City, New York 11530
         Ph: 516.355.9696
         chorn@rfriedmanlaw.com

PF/D244302/FL3160